## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL NEWDOW,

        Plaintiff,

        v.

GEORGE W. BUSH, PRESIDENT OF
THE UNITED STATES, et al.,

        Defendants.

Civil Action No.  04-2208 (JDB)

## MEMORANDUM OPINION

On January 14, 2005, this Court denied plaintiff Michael Newdow's motion for a preliminary injunction that sought to enjoin President George W. Bush from having prayers recited by invited clergy at the 2005 Presidential Inauguration.  Although the Inauguration has come and gone -- with the inclusion of an invocation and benediction given by clergy -- the Court's earlier ruling on the preliminary injunction did not dispose of the case because Newdow's Complaint also sought a declaratory judgment and a permanent injunction against the inclusion of religious prayer at future Presidential Inaugurations, which he contends would violate the First Amendment.  Now defendants President Bush, the Joint Congressional Committee on Inaugural Ceremonies ("JCCIC"), Senator Trent Lott, the Joint Task Force - Armed Forces Inaugural Committee ("JTF-AFIC"), and Galen Jackson (collectively "federal defendants"), as well as the Presidential Inauguration Committee ("PIC") and Greg Jenkins, have moved to dismiss Newdow's Complaint on the grounds that he is precluded by his previous litigation in 2001 from

bringing this suit and he does not have standing to pursue this action.[1]  For the reasons that

follow, the Court will grant defendants' motions.

## BACKGROUND

The facts of this case, as well as those of Newdow's 2001 suit against President Bush,

Newdow v. Bush, No. CIV S-01-218 (E.D. Cal.) (hereafter referred to as "Newdow I"), are set

forth in detail in the Court's January 14, 2005 Memorandum Opinion.  See Newdow v. Bush, 355

F. Supp. 2d 265 (D.D.C. 2005).  In 2001, Newdow challenged the constitutionality of the

inclusion of religious prayers in the 2001 Inauguration.  The Ninth Circuit affirmed the dismissal

of Newdow's action, finding that he "lacks standing to bring this action because he does not

allege a sufficiently concrete and specific injury."  Newdow v. Bush, 89 Fed. Appx. 624, 2004

WL 334438, at *1 (9th Cir. Feb. 17, 2004) (citing Valley Forge Christian College v. Americans

United for Separation of Church and State, Inc., 454 U.S. 464, 482-86 (1982)).  On December

16, 2004, Newdow filed his Complaint and motion for preliminary injunction in this case.  After

holding a motions hearing, this Court denied Newdow's motion for a preliminary injunction.  His

subsequent request for an emergency injunction and stay of this Court's decision was denied by

the D.C. Circuit and the Supreme Court.  See Newdow v. Bush, 2005 WL 89011 (D.C. Cir.

2005), application for injunction pending appeal denied, No. 04A623 S.Ct. (January 19, 2005).

The Presidential Inauguration then occurred as planned on January 20, 2005, at which the

Reverend Doctor Luis Leon and Pastor Kirby Jon Caldwell gave an invocation and benediction,

respectively.  See 151 Cong. Rec. S101-05 (daily ed. January 20, 2005) (transcript of inaugural

---

[1]  PIC also argues that it is a private entity and therefore the Establishment Clause does
not apply to it.  Because the Court finds that this action is precluded on other grounds, it is not
necessary to consider this issue.

ceremony).  The parties subsequently provided supplemental briefing on defendants' motions to

dismiss, focusing on the questions of issue preclusion and standing.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of establishing that the court

has jurisdiction.  See Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9,

13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the

scope of its jurisdictional authority"); see also Pitney Bowes, Inc. v. United States Postal Serv.,

27 F. Supp. 2d 15, 18 (D.D.C. 1998).  Although a court must accept as true all the factual

allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule

12(b)(1), Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S.

163, 164 (1993), "'plaintiff[s'] factual allegations in the complaint . . . will bear closer scrutiny in

resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."

Grand Lodge, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller,

Federal Practice and Procedure § 1350 (2d ed. 1990)).  Additionally, a court may consider

material other than the allegations of the complaint in determining whether it has jurisdiction to

hear the case, as long as it still accepts the factual allegations in the complaint as true.  See

Jerome Stevens Pharmaceuticals, Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); EEOC

v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997); Herbert v. Nat'l

Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir.1992); Haase v. Sessions, 835 F.2d 902, 906 (D.C.

Cir. 1987); Hohri v. United States, 782 F.2d 227, 241 (D.C. Cir. 1986).

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P.

12(b)(1) should not prevail "unless plaintiffs can prove no set of facts in support of their claim

which would entitle them to relief." Kowal v. MCI Commun. Corp., 16 F.3d 1271, 1276 (D.C.

Cir. 1994); Beverly Enters., Inc. v. Herman, 50 F. Supp. 2d 7, 11 (D.D.C. 1999).  At the stage of

litigation when dismissal is sought, a plaintiff's complaint must be construed liberally, and the

plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged

facts.  See St. Francis Xavier Parochial Sch., 117 F.3d at 624.

## ANALYSIS

I.      **Issue Preclusion**

"Once a court has decided an issue of fact or law necessary to its judgment, that decision

may preclude relitigation of the issue in a suit on a different cause of action involving a party to

the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980).  A prior ruling will preclude

relitigation if: (1) the same issue now being raised was "contested by the parties and submitted

for judicial determination in the prior case"; (2) the issue was "actually and necessarily

determined by a court of competent jurisdiction in that prior case"; and (3) preclusion does not

"work a basic unfairness to a party bound by the first determination." Id.  In the case of a

jurisdictional dismissal -- here, lack of standing -- a prior ruling will not have preclusive effect if

the "curable defect" exception applies.  See Dozier v. Ford Motor Co., 702 F.2d 1189, 1192

(D.C. Cir. 1983).  For this exception to apply, the jurisdictional deficiency from the prior

litigation must be "remedied by *occurrences subsequent to the original dismissal*." Id. (emphasis

in original).

In Newdow I, the Ninth Circuit affirmed the dismissal of plaintiff's complaint on the

ground that he "lacks standing to bring this action because he does not allege a sufficiently

concrete and specific injury." Newdow v. Bush, 2004 WL 334438, at *1.  Hence, the issue of

standing to bring this type of Establishment Clause claim against President Bush and others was clearly resolved in Newdow I by a court of competent jurisdiction.  See Cutler v. Hayes, 818 F.2d 879, 889 (D.C. Cir. 1987) (issue preclusion applies to standing).  Moreover, the question of standing was vigorously litigated at all stages by all parties, see PIC Mem., Exs. 1-3 (Newdow I court order discussing Newdow's standing), and therefore a finding that the issue is precluded from relitigation would not work a "basic unfairness."  See Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992) (unfairness created when party did not have incentive to litigate issue in earlier action).  The only reason that Newdow might not be precluded from relitigating standing would be that the jurisdictional defect in his standing in Newdow I has since been cured.  See Dozier, 702 F.2d at 1192.

In his earlier action, Newdow alleged that the inclusion of religious prayers at the 2001 Presidential Inauguration made him feel like an "outsider" when he watched the inauguration on television.  See 2001 Compl. ¶ 12-13; 28-30.  Defendants contend that because Newdow is alleging essentially the identical injury in this case -- injury from viewing or not viewing the inauguration -- he is precluded by the outcome in Newdow I from establishing that he has standing before this Court.  See Fed. Def. Mem. at 11-12.  Newdow argues that there are two -- albeit mutually exclusive -- differences between this case and Newdow I.  First, Newdow alleges that physically attending an inauguration among thousands of his fellow citizens gives rise to a different injury.  See Pl. Supp. Mem. at 1-3.  Second, he contends that being forced to forgo attending the inauguration because of the religious prayers is a separate injury.  Id. at 3.  Newdow seems to recognize the inconsistency of these positions, and ultimately concedes that his alleged injury in this case is being forced to forgo attending the inauguration.  Id. at 3 n.5 ("let it be stated

here that Newdow's argument regarding his former injury [injury by attendance] was made

because he hoped to obtain the injunction in which case he would have attended the inauguration.

It was because he could not avoid the former injury [injury by attendance] that he 'chose,' instead,

to suffer the latter [injury by forgoing the inauguration]."). This "choice" by Newdow is also

consistent with the fact that he did not attend the 2005 Presidential Inauguration. Id., App. A,

Declaration of Michael Newdow ("I did not attend the [inauguration]."). Accordingly, for

purposes of defendants' motions, plaintiff's alleged injury is having to forgo the inauguration

because of the inclusion of religious prayers at the ceremony.[2]

Comparing the injuries alleged in this case with those in Newdow I, it is apparent they are

essentially the same -- inclusion of religious prayer at the inauguration will make plaintiff feel

like an "outsider," whether he chooses to attend or not. Compare 2001 Compl. ¶ 30 with Compl.

¶ 57. Even Newdow conceded in his brief before the D.C. Circuit in this case that he would be

precluded from relitigating "the general 'offense' and 'political outsider' claims that stem from

knowing that the President called in chaplains." Def. Supp. Mem., Tab A, "Motion of

Plaintiff/Appellant Seeking Stay of Judgment and Granting Preliminary Injunction" at 4. The

question now before the Court, however, is whether being forced to alter one's behavior and

forgo actually attending the inauguration is a sufficiently different type of injury than that

resulting from watching the inauguration on television so as to avoid the preclusive effect of

---

[2] Ultimately, the particular injury alleged by Newdow -- watching an inauguration on television, physically attending it, or forgoing it -- does not make a difference for purposes of the preclusion issue.

Newdow I.[3]

The Supreme Court in Abington School District v. Schempp, 374 U.S. 203, 224-25 (1963), noted that for purposes of assessing the standing of school children, there was no difference between children being exposed to the religious conduct or avoiding it.  See also Valley Forge, 454 U.S. at 486-87 n.22 (noting that "the plaintiffs in Schempp had standing, . . . because impressionable schoolchildren were subjected to unwelcome religious exercises or were forced to assume special burdens to avoid them").  Subsequently, many courts have followed this reasoning in assessing standing.  See Suhre v. Haywood County, N.C., 131 F.3d 1083, 1086 (4th Cir. 1997); Doe v. County of Montgomery, Ill., 41 F.3d 1156, 1159 (7th Cir. 1994) (injury-in-fact can be established either by having to confront religious conduct or having to avoid it); Newdow v. Egan, 309 F. Supp. 2d 29, 35 (D.D.C. 2004) ("A plaintiff must also allege that she either altered her behavior because of the offensive activity . . . or is forced to confront the offending activity on a regular basis or in her normal routine.").

Because there is no relevant distinction between being forced to confront, or choosing to avoid, offensive conduct, Newdow is precluded from relitigating his standing.[4]  The only

---

[3]  Plaintiff also argues that physically attending the inauguration, along with thousands of other citizens, changes the intensity and coercive nature of the alleged injury so as to avoid issue preclusion.  See Pl. Supp. Mem. at 1-3.  As noted above, however, such an injury is inconsistent with an injury based on forgoing the ceremony.  Moreover, the medium through which Newdow observes the allegedly offensive conduct does not change the nature of the injury.  The injuries alleged by Newdow -- general offense and being made to feel like a political outsider -- are suffered whether he sees the prayers on television or in person.  Consideration of the coercive effect of a prayer pertains only to the special case of school children, not to mature, sophisticated adults like Newdow.  See Lee v. Weisman, 505 U.S. 577, 592 (1992) (noting the "heightened concerns" of "subtle coercive pressures" found in elementary and secondary public schools).

[4]  The application of issue preclusion does not turn on the correctness of the earlier decision.  See Cutler, 818 F.2d at 888.

difference between the injuries alleged here and those alleged in <u>Newdow I</u> is that Newdow

chose to avoid the allegedly offensive conduct by not attending the 2005 Presidential

Inauguration, whereas he was exposed to the allegedly offensive conduct when he chose to watch

the 2001 Inauguration on television.  As the reasoning in <u>Schempp</u> makes clear, this is a

distinction without a difference.  Thus, because Newdow's newly alleged injuries do not cure the

jurisdictional defect found in <u>Newdow I</u>, the "curable defect" exception from <u>Dozier</u> does not

apply, and Newdow is precluded from relitigating his standing here.

## II.      Justiciability

Even if Newdow were not precluded from relitigating the standing issue before this

Court, his Complaint must be dismissed nonetheless because no justiciable case or controversy

remains.  A matter may be rendered nonjusticiable for a variety of reasons, frequently blending

constitutional and prudential considerations.  <u>See</u> <u>Flast v. Cohen</u>, 392 U.S. 83, 95 (1968) ("no

justiciable controversy is presented when the parties seek adjudication of only a political

question, when the parties are asking for an advisory opinion, when the question sought to be

adjudicated has been mooted by subsequent developments, and when there is no standing to

maintain the action.").  In this case, the doctrines of standing and mootness -- both of which are

rooted in the constitutional limits on the power of the federal judiciary --  deprive this Court of

jurisdiction to grant the relief Newdow requests.

### A.      Standing

The authority of the judiciary is limited by Article III of the Constitution to the

"resolution of 'cases' and 'controversies.'"  <u>Valley Forge</u>, 454 U.S. at 471.  The judicial powers

bestowed by Article III are "not an unconditioned authority to determine the constitutionality of

legislative or executive acts," but, rather, the "power to declare the rights of individuals and to

measure the authority of governments . . . 'is legitimate only in the last resort, and as a necessity

in the determination of real, earnest and vital controversy.'" Id. (quoting Chicago & Grand Trunk

R. Co. v. Wellman, 143 U.S. 339, 345 (1892)).  This principle of limited judicial authority is, in

part, manifest by the requirement that a litigant have standing to bring an action, and thus be

"entitled to have the court decide the merits of the dispute or of particular issues." Warth v.

Seldin, 422 U.S. 490, 498 (1975).  The standing inquiry asks "whether the plaintiff has 'alleged

such a personal stake in the outcome of the controversy' as to warrant his invocation of

federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." Id.

(quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).

     Standing is a requirement, therefore, that every litigant in a federal lawsuit must establish.

It is a burden borne by the plaintiff and each element of standing "must be supported in the same

way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner

and degree of evidence required at the successive stages of the litigation." Lujan v. Defenders of

Wildlife, 504 U.S. 555, 561 (1992).  To establish Article III standing, a plaintiff must first allege

that he "suffered an 'injury in fact' -- an invasion of a legally protected interest which is (a)

concrete and particularized ... and (b) actual or imminent, not 'conjectural' or 'hypothetical' ...."

Id. at 560 (citations omitted).  "Second, there must be a causal connection between the injury and

the conduct complained of." Id. (quotations omitted).  "Third, it must be likely, as opposed to

merely speculative, that the injury will be redressed by a favorable decision." Id. (quotations

omitted).  Defendants contend Newdow lacks standing to bring this action because he has not

suffered an injury-in-fact and his alleged injuries are not redressable by an order of this Court.

     1.     Injury-in-Fact

To establish the first prong of Article III standing, Newdow must show that he suffered an

injury that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or

hypothetical." Friends of the Earth, Inc. v. Laidlaw Environmental Svcs., Inc., 528 U.S. 167,

180-81 (2000) (citing Lujan, 504 U.S. at 560-61). Newdow's Complaint alleges that he will be

offended by the religious prayers at the inauguration and that he will be made to feel like an

outsider. Compl. ¶¶ 21, 56-57, 76. Generally, "psychic injury" (i.e., feeling offended) is not

sufficient to establish an injury-in-fact. See Valley Forge, 454 U.S. at 485-86 ("psychological

consequence presumably produced by observation of conduct with which one disagrees" is not a

sufficient injury for Article III standing); Humane Soc'y of United States v. Babbitt, 46 F.3d 93,

98 (D.C. Cir. 1995) ("general emotional harm, no matter how deeply felt, cannot suffice for

injury-in-fact for standing purposes"). In many cases that address the observance of allegedly

offensive religious prayer or displays, however, a core component of the alleged harms is this

same "psychic injury." See Santa Fe Indep. School Dist. v. Doe, 530 U.S. 290, 309 (2000)

(offensive religious messages make some, including plaintiffs with standing, feel like political

outsiders). The key point, though, is that a plaintiff cannot rely exclusively on abstract "psychic

injuries" to establish standing; rather, a plaintiff must establish a "personal connection between

[him or herself] and the challenged display in his or her home community." Suhre, 131 F.3d. at

1087; see also Valley Forge, 454 U.S. 485-86 (psychic injury alone not sufficient for standing);

Washegesic v. Bloomingdale Pub. Sch., 33 F.3d 679, 681-83 (6th Cir. 1994) (student had

standing to sue over constitutionality of religious portrait at school he formerly attended); Saladin

v. City of Milledgeville, 812 F.2d 687, 692-93 (11th Cir. 1987) (plaintiff who was part of city

and received mail from city could challenge religious symbols on city's seal).

In assessing what suffices as a personal connection for standing, one can look to two categories of Establishment Clause cases -- those challenging *prayer* in a public setting (i.e., school or legislative session) and those challenging the inclusion of a *religious display* on public grounds.  In the prayer cases, plaintiffs who have had a sufficient personal connection to establish standing include students (or their parents) who attend the school and regular attendees of the legislative body.  See Lee v. Weisman, 505 U.S. at 584 (currently enrolled students had standing to challenge graduation prayer); Wynee v. Town of Great Falls, S.C., 376 F.3d 292, 294 (4th Cir. 2004) (plaintiff regularly attended, for roughly two years, monthly town council meetings where prayer read); cf. Doe v. Madison School Dist. No. 321, 177 F.3d 789, 797 (9th Cir. 1999) (en banc) (no standing for parent of former student to challenge prayer at graduation).  In the religious-display cases, a personal connection exists if a plaintiff is a member of the community in which the challenged religious exhibit is displayed, or if the plaintiff frequently visited the site of the display.  See Van Orden v. Perry, 125 S.Ct. 2854, 2858 (2005) (resident of capitol city and frequent visitor to capitol grounds could challenge Ten Commandments monument on capitol grounds); Books v. City of Elkhart, Ind., 235 F.3d 292, 299 (7th Cir. 2000) (citizens who used a municipal building had standing to challenge the placement of a Ten Commandments monument in front of the building); Adland v. Russ, 307 F.3d 471, 478 (6th Cir. 2002) (plaintiffs who regularly traveled to state capitol for political advocacy had standing to challenge inclusion of Ten Commandments monument on capitol grounds).

Here, Newdow lacks any of the indicia of a personal connection found in other prayer or public-display cases.  Certainly the Presidential Inauguration is a national event, but it is only

held once every four years.  In order to come in contact with the allegedly offensive prayers,

Newdow must either watch it on television or make a special trip to Washington to observe the

prayers in person.  He can also avoid the prayers by not watching the television, or by not making

the trip to Washington.  But, under either scenario, he does not have the necessary personal

connection to establish standing.  Newdow does not come in regular contact with the inaugural

prayers, nor is he forced to change his typical routine to avoid them.  See Newdow v. Egan, 309

F. Supp. 2d at 35 (no personal connection to Senate prayer when making a one-time special trip

to observe it).  There is no evidence that he is a frequent or regular attendee or invitee at

Presidential Inaugurations.  Hence, without a personal connection to the inauguration that would

make his injuries particularized and concrete, Newdow's alleged injuries -- general offense and

outsider status -- are akin to the psychological injuries occurring from the observation of

offensive conduct that the Supreme Court in Valley Forge deemed insufficient to establish an

injury-in-fact.

2.      Redressability

Besides his inability to establish the injury-in-fact element of standing, Newdow also

cannot show that his injuries are redressable by an order of this Court.  A plaintiff must establish

that it is "likely, as opposed to merely speculative that the injury will be redressed by a favorable

decision." Lujan 504 U.S. at 561 (internal quotations omitted).  Although plaintiff brought this

action against several defendants, he contends -- and the Court concurs -- that the President

himself has the exclusive decision-making authority as to whether there will be religious prayer

at an inauguration.  See Compl. ¶ 39.  Thus, to redress Newdow's injuries -- i.e., prevent the

inclusion of religious prayers at future inaugurations -- the Court would have to issue a

-12-

declaratory judgment and permanent injunction against President Bush, the President of the United States.

Newdow has suggested, as an alternative to enjoining the President, that this Court could enjoin PIC, which is involved in planning, financing, and executing the inauguration. See Pl. Supp. Mem. at 5. Under this theory, not only would the President be without assistance to bring clergy to the inauguration, but it can be assumed, argues Newdow, that the President would abide by the "authoritative interpretation of the . . . constitutional provisions by the District Court, even though they would not be directly bound by such a determination." Id. (quoting Massachusetts v. Franklin, 505 U.S. 788, 803 (1992)). Moreover, Newdow contends an injunction may be issued against a "key actor" even if some other party has the ultimate decision-making authority. Id. Putting aside the question whether the Court could enjoin a private entity, such as PIC, for a violation of the Establishment Clause, Newdow's alternative suggestion would not provide the relief he seeks -- preventing the inclusion of prayer at inaugurations. PIC's role in the 2005 inaugural prayers was principally extending invitations to the clergy selected by the President. See PIC Mem., Ex. 5, Declaration of Gregory L. Jenkins ¶ 7. PIC noted at the motions hearing that, even if the injunction were to issue against PIC, the President could still extend invitations to the clergy on his own. See 1/13/05 Tr. 77:21-25.[5] Furthermore, there is no basis to assume

_____

[5] Newdow cites Duke Energy Trading & Mktg. L.L.C. v. Davis, 267 F.3d 1042, 1051 (9th Cir. 2001), for the proposition that Article III standing can exist even where the object of the injunction sought -- in this instance, PIC -- does not have the ultimate decision-making authority necessary to redress the grievance. In that case, the Ninth Circuit said a wholesale energy supplier did have standing to seek an injunction that would have blocked the governor of California from continuing to intervene in the California Power Exchange's ("CalPX") decision to liquidate a utility's "forward contract positions" for the benefit of the plaintiff. See id. at 1051. The court said this was so, even though enjoining the governor was not certain to result in CalPX liquidating the forward contract positions, a decision over which CalPX retained "sole

that *this* PIC will have any role in future inaugurations, or that its role will include inviting

clergy.  The Court therefore concludes that only an injunction or declaratory judgment against the

President would provide plaintiff with the relief he seeks.

The issuance of an injunction or a declaratory judgment against the President draws the

Court into serious separation-of-powers issues.  In particular, there is long-standing legal

authority that the courts cannot issue injunctions against the co-equal Executive and Legislative

branches of our government.  See Mississippi v. Johnson, 71 U.S. 475, 500 (1866) ("Neither [the

Congress nor the President] can be restrained in its action by the judicial department; though the

acts of both, when performed, are, in proper cases, subject to its cognizance.").   This principle

has been articulated, throughout the years, by the Supreme Court and the D.C. Circuit.  See

Franklin v. Massachusetts, 505 U.S. 788, 802-03 (1992) (plurality opinion) ("In general, 'this

court has no jurisdiction of a bill to enjoin the President in performance of his official duties.'"

(quoting Mississippi v. Johnson, 71 U.S. at 500));  Commonwealth of Massachusetts v. Mellon,

262 U.S. 447, 487 (1923) ("general rule is that neither department may invade the province of the

other and neither may control, direct, or restrain the action of the other");  Clinton v. Jones, 520

U.S. 681, 718-19 (1997) (Breyer, J., concurring) (acknowledging "the apparently unbroken

historical tradition ... implicit in the separation of powers that a President may not be ordered by

_____

discretion."  See id.  To the extent that the California governor and PIC can each be viewed as
"key actors" who lack authority to bring about the ultimate result desired by the plaintiff, Duke
Energy supports Newdow's position.  The analogy, however, ends there.  Unlike in the present
matter, the party with the ultimate discretion in Duke Energy -- CalPX -- had been poised, prior
to the litigation, to take the action that the plaintiff desired, but was thwarted by the intervention
of a tangential actor.  Thus, the Ninth Circuit held, there was "nothing at all 'speculative' about
tracing [plaintiff's] injury to Governor Davis's commandeering orders ...."  See id.  In the case of
the Presidential Inauguration, there certainly has been no suggestion that, but for the involvement
of PIC, the President would not have invited clergy to give an invocation and benediction.

the Judiciary to perform particular Executive acts" (quoting <u>Franklin</u>, 505 U.S. at 802-03)); <u>Swan</u>

<u>v. Clinton</u>, 100 F.3d 973, 978 (D.C. Cir. 1996) (noting that the Supreme Court has issued a "stern

admonition" that injunctive relief against the President personally is an "extraordinary measure").

      Although the language in these decisions is focused on injunctions -- which would be

required in this case to prevent future inaugural prayers -- the reasoning is equally applicable to

declaratory judgments.  <u>See</u> <u>Swan</u>, 100 F.3d at 977 ("Although the following discussion is

couched in terms of our ability to grant injunctive relief against the President, similar

considerations regarding a court's power to issue relief against the President himself apply to

Swan's request for a declaratory judgment.").  Justice Scalia also explained in <u>Franklin v.</u>

<u>Massachusetts</u>:

> For similar reasons, I think we cannot issue a declaratory judgment against the
> President.  It is incompatible with his constitutional position that he can be
> compelled to defend his executive actions before a court ....  The President's
> immunity from such judicial relief is "a functionally mandated incident of the
> President's unique office, rooted in the constitutional tradition of the separation of
> powers and supported by our history."

505 U.S. at 827 (Scalia, J., concurring) (quoting <u>Nixon v. Fitzgerald</u>, 457 U.S. 731, 749 (1982)).

      Without a viable alternative to enjoining the President in this case, the Court must address

whether it can issue an injunction or declaratory judgment against the President to achieve the

result Newdow seeks -- i.e., to redress his alleged injuries.  For all the broad language in the

Supreme Court decisions regarding this question, this Court is unable to find a case in which the

actual disposition turned on the inability of the courts to issue an injunction against the Congress

or the Executive.  <u>See</u> <u>Franklin</u>, 505 U.S. 803 (injury could be redressed by enjoining the

Secretary of Commerce); <u>Swan</u>, 100 F.3d at 979 (injunction against executive director of

National Credit Union Administration).  On the other hand, neither the Court, nor any of the

parties, has identified a case in which a court actually issued an injunction or declaratory

judgment against the President for acts undertaken in his official capacity.[6]  No doubt the lack of

cases is due in part to the fact that it is usually possible to enjoin a lower level official.  See

Nixon v. Sirica, 487 F.2d 700, 709 (D.C. Cir. 1973) (noting that actions against the executive

should be directed at lower executive officials).

Notwithstanding the lack of direct precedent, the Court need not engage in guesswork on

this issue, because the role of the judiciary is to address the specific facts of the case before it.

See Valley Forge, 454 U.S. at 472 ("legal questions presented to the court will be resolved, not in

the rarified atmosphere of a debating society, but in a concrete factual context").  In Mississippi

v. Johnson and in  Franklin v. Massachusetts, the Supreme Court has sent a clear message that an

injunction should not be issued against the President for official acts.  The D.C. Circuit has

echoed this view in Swan v. Clinton.  Thus, under these cases and on the facts of this case --

where only an injunction or declaratory judgment against the President can redress plaintiff's

injury -- the Court is without the authority to grant such relief.  To conclude otherwise, would be

to render meaningless the words of the Supreme Court and the D.C. Circuit that injunctions and

declaratory judgments may not be issued against the President.  A district court should not

---

[6]  Plaintiff contends that injunctive relief was in fact issued against the President in
United States v. Nixon, 418 U.S. 683 (1974), and In re Sealed Cases, 121 F.3d 729 (D.C. Cir.
1997).   Neither case, however, involved a court order enjoining the President; rather, those cases
simply rejected White House challenges to subpoenas on the grounds of executive privilege.
Though there are functional similarities between declining to quash a subpoena of presidential
documents and enjoining the President from refusing to surrender subpoenaed material, the
distinction is more than a formalism because the latter situation involves the exercise of the
coercive power of the judicial branch.

disregard the strong pronouncements of the Supreme Court in the absence of other controlling law.  See Gaylor v. United States, 74 F.3d 214, 217 (10th Cir. 1996) ("While these statements [of the Supreme Court] are dicta, this court considers itself bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements.").  Thus, the Court concludes that Newdow's alleged injuries are not redressable by this Court, and therefore he is unable to establish Article III standing.

####    B.    Mootness

Another facet of the "case and controversy" requirement of Article III of the Constitution is the doctrine of mootness.  Gulf Oil Corp. v. Brock, 778 F.2d 834, 838 (D.C. Cir. 1985). "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies."  Iron Arrow Honor Society v. Heckler, 464 U.S. 67, 70 (1983).  Although none of the parties has asserted that this case is moot, the Court is obliged to address this question *sua sponte* because it directly affects jurisdiction.  See id.; Mine Reclamation Corp. v. FERC, 30 F.3d 1519, 1522 (D.C. Cir. 1994).

On January 20, 2005, President Bush held his second inauguration, which included religious prayer offered by the Reverend Doctor Luis Leon and Pastor Kirby Jon Caldwell. Plaintiff's verified Complaint seeks a declaration from this Court that defendants violated both the Establishment and Free Exercise Clauses of the Constitution by causing the clergymen to deliver the invocation and benediction.  See Compl. (prayer for relief).  He also seeks an injunction against "these defendants -- or similarly situated government officials" from utilizing clergy for religious acts at "future presidential inaugurations."  Id.  There are, however, several problems with granting either form of relief.

-17-

With respect to the requested injunction against President Bush, any such order directed to the President would be ineffective for future inaugurations because he is constitutionally barred from serving another term, and thus will never have another inauguration.  See U.S. Const. amend. XXII, § 1.  As for the request for injunctive relief against "similarly situated government officials," Plaintiff's claim is unavailing because this Court's jurisdiction is limited by Article III to those parties to a "case or controversy" before the Court.  See North Carolina v. Rice, 404 U.S. 244, 246 (1971) ("federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them").  This Court is powerless to enjoin future unknown Presidents for future actions those Presidents may or may not take.  See id. ("To be cognizable in a federal court, a suit 'must ... be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'").

The fact that Newdow also seeks a declaratory judgment in this matter does not alter the mootness determination, because the jurisdictional prerequisite of a "case or controversy" applies with equal force to actions for declaratory relief.  See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240 (1937) (Declaratory Judgment Act "is operative only in respect to controversies which are such in the constitutional sense").  Article III simply does not permit this Court to offer advisory opinions as to the constitutionality of actions for which no redress can be granted.  See Brock, 778 F.2d at 838 (mootness "rests on the principle that a federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.'").

Furthermore, the ability of the Court to adjudicate an Establishment Clause claim such as

this requires an inquiry into the words used in the prayer.  See Marsh v. Chambers, 463 U.S. 783, 794 (1983) (consideration of whether of the prayer is used to "proselytize or advance any one, or to disparage any other faith or belief" is relevant to the Establishment Clause claim).  This Court already has adopted that analytical approach in its earlier decision on Newdow's motion for a preliminary injunction.  See Newdow, 355 F. Supp. 2d at 283-88.  Although a re-elected President's first inauguration might serve as an appropriate guidepost of the content of anticipated prayers at that President's second inauguration --  at least where, as in this case, the organizers do not aver that the tone of the prayers offered at the second ceremony would differ from those offered at the first -- this Court cannot now rule on the constitutionality of prayers yet unspoken at future inaugurations of Presidents who will make their own assessments and choices with respect to the inclusion of prayer.

One might observe that the mootness analysis leaves a narrow temporal window for potential challenges to inaugural prayers on Establishment Clause grounds.  Only after the identity of the President-elect is determined -- which generally occurs just two and a half months prior to the inauguration -- and only after the inclusion of an inaugural prayer, as well as its tenor (if not its precise content), is fairly certain, can a court conduct meaningful review (assuming that the complaining party has standing).  Such constraints are undeniably exceptional, but they are hardly unique in our judicial system; and, while courts have developed an exception to mootness for cases that are "capable of repetition, yet evading review," the circumstances of this case do not satisfy the requirements of that exception.  See, e.g., First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 774 (1978) (stating that, in order for the exception to apply, "the challenged action [must be in] duration too short to be fully litigated prior to its cessation or expiration," and there

also must be "a reasonable expectation that the same complaining party [will] be subjected to the

same action again.").  As the earlier proceedings in this case reflect, the period between a

President's election and inauguration is not too short to permit judicial review.

## CONCLUSION

For these reasons, the Court will grant defendants' motions to dismiss.  A separate order

has been issued on this date.


        /s/ John D. Bates
        JOHN D. BATES
    United States District Judge


Dated:   September 14, 2005

Copies to:

Michael Newdow
Post Office Box 233345
Sacramento, California  95823
916-427-6669  (telephone)

Nicholas J. Patterson
U.S. Department of Justice
20 Massachusetts Avenue, Northwest
Room 7109
Washington, D.C.  20001
202-514-4523  (telephone)
202-616-8470  (fax)
E-mail:  nicholas.patterson@usdoj.gov

George J. Terwilliger
White & Case, L.L.P.
701 13th Street, Northwest
Washington, D.C.  20005
202-626-3600  (telephone)
E-mail:  gterwilliger@whitecase.com

James Matthew Henderson, Sr.
American Center for Law and Justice
201 Maryland Avenue, Northeast
Washington, D.C.  20002
202-546-8890  (telephone)
202-337-3167  (fax)
E-mail:  JMHenderson@aclj-dc.dc.org